**Application of VILORIA.**
No. 9560.

United States District Court
D. Hawaii, First Division.
June 16, 1949.

Sau Ung Loo Chan, Honolulu, Hawaii, N. W. Y. Char, Honolulu, Hawaii, for applicant.

John J. Kelleher, Naturalization Examiner, Honolulu, Hawaii.

METZGER, District Judge.

Stipulated record shows the applicant was born a national of the United States in the Philippine Islands October 11, 1914; that under laws then existing and continuing until July 4, 1946 he owed permanent allegiance to the United States; that at the age of fourteen years he came to Hawaii, August 12, 1928, where he established and maintained his residence, without interruption until May 1946, working during the war as a civilian employee of the Navy, and in May 1946, at Honolulu, entered into a contract of employment with the Department of the Army for a term of eighteen months, and was thereafter taken to the Marianas to perform under the Engineers work on Guam; that he fulfilled his contract of employment and was returned by the Army to his home in Honolulu, November 10, 1947.

On October 11, 1948, he filed his application for naturalization, under Section 307 (a), 8 U.S.C.A. § 707(a) of the Nationality Act of 1940, as amended July 2, 1946, 8 U. S.C.A. § 721a, permitting Filipinos to become citizens.

The Examiner of the Naturalization Service moved for a denial of the petition, upon the ground that petitioner had not fulfilled legal requirement, by reason of being absent from the United States for more than a year, to wit, from May 1946 to November 1947, and sixteen months after the establishment of the Philippine Republic, July 4, 1946.

■ There is no doubt that a person born in the Philippine Islands in 1914 was by reason of such birth a citizen of the Commonwealth of the Philippines, notwithstanding that he was a national of the United States owing permanent allegiance to the United States.

In March 1934, 48 U.S.C.A. § 1231 et seq., the U. S. Congress passed a Philippines Independence Act providing that upon its approval by the Legislature of the Commonwealth of the Philippines it should become effective upon the President's Proclamation to be uttered on the 4th of July ten years thereafter.

War conditions forbade the utterance of the Proclamation on July 4, 1944, and by mutual consent it was postponed and promulgated on July 4, 1946, at which date the Philippine Republic, an independent nation, was established.

The President's Proclamation of July 4, 1946, No. 2695, 48 U.S.C.A. § 1240 note, in compliance with Acts of Congress, withdrew and surrendered all jurisdiction and control or sovereignty over the territory and people of the Philippine Islands. While there was no mention, either in the Independence Act or the Proclamation, of the status of Filipino nationals who were permanent residents in the United States or its possessions on and prior to July 4, 1946, I must conclude that they neither gained or had reserved to them any national rights or naturalization rights superior to those of Filipinos who had remained in the land of their birth until five years before the Naturalization Act of July 2, 1946, which authorized (not for the first time, but more liberally and for a larger class) the naturalization of Filipino citizens, and that on and after the President's Proclamation of July 4, 1946, all Filipino citizens, wherever they were, became aliens to the United States. Peculiarly, nationals had but two days from July 2 to July 4, 1946 to apply under the terms extended to nationals.

Few persons will believe today that the Congressional desire or interest is that Filipinos who have so long been patriotic nationals, living and working in the United States or its possessions, imbibing American patriotism and having no other, should be declared aliens to the United States on a certain date and thereafter dealt with as such, but when the Philippines Independence Act was passed in March 1934, Filipinos were, with few exceptions, by laws of long standing not eligible for citizenship and it was not then known that they ever would be, so they could then be regarded in no other manner than as aliens after the country of their birth should become an independent nation. Congress has since made no permanent exceptions. The pity is that thousands of employees in government work may lose their employment unless Congress continues to incorporate saving provisions in certain appropriation acts, as it has in several such acts, beginning in 1946.

A person born in the Philippine Islands in 1914, or any time after the Treaty with Spain in December, 1898, 30 Stat. 1754, was a citizen of the Philippines, whose Commonwealth government became the Philippine Republic, an independent nation, on July 4, 1946.

In dealing with naturalization matters, differing greatly from immigration, courts have been disposed to exercise rather a wide range, although it is well established and every judge knows that naturalization requirements must be strictly construed. A strict construction does not necessarily mean the harshest technical connotation of words, but a strict compliance with the purpose and intent of requirements called for to fulfill qualifications. I have read many decisions on naturalization and know that there are many divergent opinions as to what Congress intended as to various features. Some judges profess that they are not influenced in their opinions by any sentimental considerations, even where they involve principles of justice. I cannot unqualifiedly subscribe to a statement that my reasoning is not influenced by my concept of justice, although I could not knowingly depart from the plain meaning of statutory requirements.

In Vasicek's Case, D.C., 271 F. 326, and the Di Giovine Case, D.C., 242 F. 741, the courts said, with reference to the purposes of the five year residence requirement:

(1) That the alien has an opportunity to acquire the principles and imbibe the spirit of our government; and

(2) That the naturalization service may have an opportunity to observe the applicant.

■ If this is a fair analysis, and I believe it is, then the petitioner has complied with all essentials of residence requirement. It can never be said that our naturalization laws are designed to obstruct worthy and qualified persons in obtaining citizenship, the contrary is true.

Now, the germ of this case, as I see it, is:

Was the continuity of petitioner's residence in Honolulu destroyed by his engagement for 18 months service to the United States, resulting in his removal by his employer from Honolulu to Guam and being detained there in government service for the full 18 months?

He entered the service as a national.

At its termination the government brought him back to his home at Honolulu. He was then an alien. The terms of his engagement, other than the time term, were not disclosed to the court. It is a reasonable presumption that if the government had desired his services at any other place than the place to which he was taken, it could have transported and held him there. Had it been at Palmyra Islands, that would have been within the jurisdictional bounds of the City and County of Honolulu and while he would have been absent from Honolulu he would have remained in the Territory of Hawaii. Likewise, had he been held at Midway—if Territorial claims of sovereignty jurisdiction over that island are correct.

Guam is a possession and under the sovereignty of the United States and a Honolulu resident transferred for work purposes from Honolulu to Guam remains within the dominion of the United States and, in my opinion, may claim for naturalization purpose Honolulu as his continuous place of residence, unless he should establish a new residence at the end of his work term.

In the case of In re Yarina, 1947, 73 F. Supp. 688, it was held: "The fact that alien having civilian employment at Wake Island was taken, as a prisoner of war, to China and Japan after having been captured by Japanese did not interrupt alien's continuous residence in the United States for naturalization purposes, since his departure was not voluntary."

By analogy it would seem that a term employee in the Engineering force of the Army constructing defense works would likely feel compelled to go and remain wherever he was directed and transported, whether within or without the United States, and it should not work to his detriment and defeat him at any time in attaining naturalization which, by birth as a national and by residence within the dominion of the United States for twenty years, he had earned.

■ My concluding opinion is that the petitioner, even though physically absent from Honolulu, was not absent within the meaning contemplated in the naturalization law and had not surrendered, abandoned, or forfeited his domiciliary rights. Absenteeism as referred to in the Nationality Act, although not therein qualified, must mean an absence either from indifferent carelessness, or one that would tend to create an implication that the subject had elected to change his place of residence and remain away by voluntary and sentimental choice, or to serve some purpose contrary to love and attachment and fidelity to American institutions, and not through duty or obligation to the United States Government; had he been informed of the passing state of the law and had an opportunity available on Guam, and had filed his petition as a national, between the limited dates of July 2 and July 4, 1946, this case could not be in court as his rights to maintain an application for citizenship were then fully established. I do not believe that he forfeited them by his continuing subservience to the government. He was at all times within the dominion laws, influence, and commands of officers of the United States, and I hold that he has complied with all legal requirements for citizenship. The motion to deny his application is overruled.